H. L. DREYER *v.* THE STATE.

1. JURY LAW — DISQUALIFYING OPINION OF JUROR. — On the *voir dire* of a juror he stated that he heard the evidence in the previous trial of one O. for the same offense charged against the appellant, and had formed the opinion that O. was guilty, but had formed no opinion as to the guilt or innocence of appellant. The defense challenged the

juror for cause, but the trial court overruled the challenge, and, the peremptory challenges of the defense being exhausted, the juror was put on the panel which convicted the appellant. The defense reserved a bill of exceptions, but it does not manifest that the evidence in O.'s case was the same as that in the appellant's, nor disclose how the appellant's amenability was affected by the evidence adduced against O. *Held*, that this state of the record fails to show that the juror entertained a disqualifying opinion in this case, or that the trial court erred in impaneling him. But *held further*, that the better practice is to discharge a juror whose impartiality is questionable.

2. MARKS AND BRANDS.— The Revised Statutes, in article 4566, require every owner of cattle, hogs, sheep, or goats to have a distinctive ear-mark and brand, and to have the same recorded; and article 4561 provides that unrecorded brands shall not be evidence of the ownership of cattle, horses, or mules. *Held*, that this latter provision does not apply to unrecorded marks. *Quære*, whether it uses the word *cattle* in a sense to comprehend sheep.

3. EVIDENCE— PRACTICE.— The prosecuting attorney was permitted, over objection by the defense, to testify that while the defendant was on bail, and during the previous trial of one O. for the same theft, he (the prosecuting attorney), with the view of using the present defendant as a witness, inquired of him whether the person who was on trial at the time was O., and the defendant replied that said person was not O., but was one M., whom he knew; and the defendant was consequently not used as a witness against O. The defense objected that the defendant was in duress and uncautioned when he made the reply to the witness, and that the latter could not fairly reproduce the reply to the prejudice of the defendant. *Held*, that the objections were untenable, and, under the circumstances, the testimony was not improper.

4. THEFT— CHARGE OF THE COURT ON THE DEFENSE OF BONA FIDE PURCHASE.— The jury were instructed for acquittal in case the defendant in good faith purchased the stolen animals, but were further instructed that a fraudulent *sale* was no defense. *Held*, that the jury may have been misled by this latter instruction. See the opinion *in extenso* on the point, and also in elucidation of the opinion in *Shoefercater* v. *State*, 5 Texas Ct. App. 207.

5. SAME.— It is error in a trial for theft to so charge the jury as to permit the conviction of the accused without proof of guilty knowledge or intent.

6. CHARGE OF COURT ON CIRCUMSTANTIAL EVIDENCE.— When the inculpatory evidence is circumstantial it is error to refuse a requested instruction which correctly expounds the cogency requisite in that character of proof.

7. RECEIVING STOLEN PROPERTY — VERDICT. — If, at a trial on an indictment for theft, the conviction depends on evidence which proves the receipt and concealment of stolen property, knowing it to have been stolen, correct practice requires that the verdict should show that the conviction was for the receiving and concealment.

APPEAL from the District Court of Nueces. Tried below before the Hon. JOHN C. RUSSELL.

Theft of ninety-two sheep, the property of William Cody, was the offense charged in the indictment. The alleged date of the theft was January 13, 1881. The jury found the defendant "guilty as charged in the indictment," and assessed his punishment at a term of two years in the penitentiary.

William Cody, for the State, testified that he lived on the Oso creek in Nueces county. In January, 1881, he lost ninety-two head of his sheep; which were taken without his consent, but by whom he did not know. He recovered some of them from the defendant, who also acknowledged that he had killed four of them, and gave witness a due bill in payment for those four. Witness had come to the town of Corpus Christi, where the defendant lived, but before he got there his son had by legal process sequestered the sheep which were recovered from the defendant. The sheep had been brought to the town of Corpus Christi from the Oso, a distance of about fourteen miles, after a rain had fallen. Witness trailed the route they had been driven, but could not find where the trail came into town. Witness did not see the defendant in possession of any of the sheep, but the defendant told him he got the sheep from Antonio Olivarez, and showed a bill of sale to witness. The sheep lost by witness were in three different ear-marks, and the witness was permitted, over objection by the defense, to delineate the three ear-marks to the jury, — the objections of the defense being that the law required the marks to be recorded, and un-

less recorded they were not evidence of ownership, and the record of them was the necessary evidence. The defense reserved exceptions to the admission of this parol proof of the ear-marks.

Proceeding with his testimony, the witness stated that the sheep he recovered were not then in the ear-marks he had described; when he got them back their ear-marks had been changed, and to prevent bleeding the ears had been burned, which also gave the marks the appearance of having been cut for a considerable time. The witness was shown a bill of sale, dated January 13, 1881, purporting to be made by Antonio Olivarez to the defendant, and for $100 to convey ninety-two sheep which, in various numbers, were in eight different ear-marks delineated in the bill of sale. Witness stated that he recovered sheep which were in three of the eight ear-marks delineated in the sale-bill, but recovered none in the other five. At the foot of the bill of sale appears the certificate of its acknowledgment by the maker, Olivarez, before Joseph Wright, inspector of hides and animals of Nueces county, by Benjamin Gravett, deputy. This certificate bears the same date as the bill of sale. The witness stated that the defendant was a butcher, and bought sheep for his butchering business.

On the cross-examination of this witness he stated that it was in January, 1881, but earlier than the 13th of that month, when he lost his sheep. Witness penned his sheep at night, but could not state whether the sheep he lost were penned the night they were lost; but from the tracks he thought they were taken out of the pens. He recovered those he got before he missed them, and before he found the tracks. He learned on the Oso that the defendant had been buying sheep in that range, and told his son, when the latter went to Corpus Christi, to take a look at the defendant's sheep. Witness knew that none of his neighbors had sold any sheep. When the sheep were lost

the witness had a Mexican herder who had charge of them night and day, but who did not live where they were usually penned. Witness did not believe, though it was possible, that his sheep had got lost by straying off. He did not ascertain that those he recovered were his sheep until they were caught and their ears examined. Defendant, in his talk with witness, said he had bought and paid for the sheep in good faith, and that he knew nothing at all about the change of their marks. Witness was apprised that Valentine Martinez had recently been convicted for stealing the identical sheep involved in the present case.

On his re-direct examination the witness stated that he did not know that defendant had any of his sheep until his son went to Corpus Christi. A brother of the defendant had told witness that the defendant had bought muttons at a little over a dollar a head, and it occurred to witness that they might be his sheep. Since the sheep were lost the witness had discharged the herder he had spoken of, and could not say what had become of him.

Edward Cody, son of the preceding witness, testifying for the State, said that on Sunday, January 16, 1881, he came to Corpus Christi and called by the defendant's place, and there found some sheep which he recognized as his father's, though their ear-marks had been changed. Witness asked the defendant about them, and he said they were a lot of sheep he had bought from Antonio Olivarez on the preceding Thursday, and he showed witness a bill of sale, and said that witness could get the sheep by making oath to them. Witness got out a writ of sequestration for the sheep, and had constable Benson to take charge of them. Cross-examined the witness stated that the defendant spoke to him in a friendly manner about the sheep, and wanted him to make oath to them in order that he, the defendant, could get out a warrant for the person who had sold them to him.

B. Gravett, for the State, testified that in January, 1881, he was deputy inspector of hides and animals, and on the 13th of that month the defendant got him to go out to his, the defendant's, place to inspect some animals. On the way there the defendant said, " A fellow drove a bunch of sheep to my place last night and I don't know whether they are all right or not, and I want you to inspect them." Witness replied that he would not inspect sheep, and had no authority to inspect sheep; to which the defendant responded, " I told the man that you would inspect them, and that it would cost five cents a head and fifty cents for a bill of sale." Defendant asked witness if he would not proceed and make out a bill of sale; and witness agreed to do so. They went on, but the man was not at defendant's place, and the witness returned to town. Soon, however, the defendant came and told witness that the man was then waiting at the former's place, and witness again went out there with the defendant. Witness saw the Mexican who had sold the sheep, and saw the sheep in a pen. Defendant had a paper in his hands, and said there were the ear-marks. Witness had his assistant to catch the sheep and take down their ear-marks. Then witness copied the ear-marks into the bill of sale, and asked the Mexican what his name was. The Mexican said his name was Antonio Olivarez, and, in reply to an inquiry by witness, said he was from the Calaveras. Witness asked him if he could write, and, replying that he could, he took the bill of sale and signed it with the name he had given. He is the same man who, under the name of Valentine Martinez, had very recently been convicted of stealing the sheep in question. Witness had never seen him before the occasion he had been testifying about, but recognized him after that, and he was arrested. After the arrest of the man the defendant said to witness, " I have heard that you have got the sheep-man that stole Cody's sheep," and witness replied, " Yes, and it ought to

be a feather in your cap, to relieve you." Then the defendant said: "If it is the man I have been told it is, I ought to have known the man at the time." The bill of sale was shown to witness, and he identified it and his certificate of its acknowledgment.

W. J. Robertson, for the State, testified that he was a justice of the peace of Nueces county, and that, on January 17, 1881, the defendant made an affidavit before witness against Antonio Olivarez, who, however, was not arrested under witness's warrant. Defendant got the witness to appoint a Mexican a special constable to look for Olivarez. The man kept the warrant eight or ten days and then returned it "not found." Whether he had made any effort to find Olivarez, the witness could not say. Nothing further was done in the case. The affidavit referred to was identified by the witness and admitted in evidence. It charged Antonio Olivarez with the theft of ninety-two sheep, the property of William Cody, on January 13, 1881.

W. E. Cummings, the district attorney, became a witness for the State, and, over objections by the defense, testified as follows: "The other day, upon the trial of Valentine Martinez *alias* Antonio Olivarez. I approached defendant with a view of making him a witness in that case. He was under bond at the time. I asked H. L. Dreyer, the defendant, if the man then on trial was Antonio Olivarez. Said H. L. Dreyer answered ' No, that is not Antonio Olivarez, that is Valentine Martinez; I know him.' Thus knowing what he would swear, I did not put him on the stand as a State's witness."

Before testifying in the case himself, the district attorney had unsuccessfully endeavored to prove by other witnesses that Martinez *alias* Olivarez was personally known to Dreyer, the defendant. It was in proof that eighty-six of Cody's sheep were recovered from the defendant. They were worth, in Cody's opinion, an average of two dollars each.

Counsel for the defense announced that they desired to introduce no proof except the bill of sale, which was already in evidence.

All other material facts are disclosed in the opinion of this court.

*McCampbell & Givens*, and *Welsh & Givens*, for the appellant. The trial court looked to the technical construction of the jury law rather than the enforcement of the right of defendant to have an impartial jury, as guaranteed him by the Bill of Rights, and thus defendant was forced to accept a juryman with settled convictions as to the bearing of the evidence to be adduced. We believe that there are many questions arising outside of the mere statutory disqualifications and causes for challenge, brought into existence by the imperative right of an accused to have an impartial jury. From the issue formed by the district attorney on this question in this case, it will be seen that it is believed by the prosecutor that defendant's peremptory challenges are to be used by him only in the order the names of jurymen appear upon the lists given respectively to the State and defendant.

The result of this rule would be to give an accused person a biased jury, should he depart from the strict numerical order in which he passed upon the jurymen in exercising his peremptory challenges.

Surely, in the gravity of a criminal cause the law will not be made the creature of injustice by such little things. In illustration of the evil that might result from the enforcement of a rule of using peremptory challenges, as urged by the prosecution, and approved in this case by the trial court, we will suppose a venire of twenty-four persons to be passed upon: Upon their *voir dire* ten of them answer that they sat upon the trial of a cause involving the same questions of fact. They are challenged for cause, and the trial court overrules the challenges. Now comes the rule of the prosecution as in this case,

and demands that defendant exhaust his peremptory challenges upon the ten jurors with the opinion formed at a former trial of the same facts. Of course defendant has no peremptory challenges left for the other fourteen jurors, and the strength, meaning and justice of the compact between the citizen and State of his right to an impartial jury is frittered away by technical construction.

We urge that the trial court had not the legal right or power to dictate to the defendant, on trial for his liberty, in what order he shall use his peremptory challenges; whether he shall commence at the bottom of his list, or the top, or in the middle of it. Appellant having exhausted his peremptory challenges upon ten of the most objectionable jurors on his list, was no reason why Charles Meuly, with a formed opinion as to the facts to come before him, should be permitted to sit, after challenge for cause; and the responsibility rests upon the trial court in a too zealous effort to serve the State at the sacrifice of one of the dearest rights of the citizen.

Clearly, appellant was not tried by twelve impartial jurors, but by eleven unprejudiced men, and one who had formed opinion upon the evidence at a former trial, and could not be impartial.

The court erred in permitting William Cody to testify, over the objections of defendant, as to the ear-mark of his sheep without producing the record of said ear-mark, or a certified copy thereof. Arts. 4556 and 4561, Rev. Stat.; art. 726, Code Crim. Proc.; *Hutto* v. *State,* 7 Texas Ct. App. 44; *Allen* v. *State,* 42 Texas, 518.

A careful examination of the record of this case will exhibit an entire absence of testimony tending to connect defendant with a taking of the sheep alleged to have been stolen. To the contrary, it is clearly shown by the evidence of State witnesses that defendant, pursuing his trade of a butcher, sought to surround his purchase of

the sheep with every safeguard of the law.  He purchased the sheep in broad daylight and in the presence of the inspector of hides and animals of Nueces county, and his bill of sale was made out by said inspector and acknowledged before him by the person selling.

In the subsequent possession of them, defendant's actions were those of a person having, as he believed, a fair and honest title, and his conduct, on learning that the property had been taken from Cody's possession, was all that could be exacted from fair dealing and a desire to respect the rights of others.

If the defendant received the property knowing it to have been stolen, the verdict of the jury surely did not so find, and in the absence of such a verdict, one finding defendant guilty of theft, without a scintilla of evidence to support the charge, will not, we trust, be sustained.

*H. Chilton,* Assistant Attorney General, for the State.

White, P. J.  One Antonio Olivarez had been separately indicted, tried and convicted of the same identical charge contained in the indictment against this defendant. When this case was called subsequently, one of the jurors herein summoned, to wit, Charles Meuley, when examined as to his qualifications stated on his *voir dire* that he was present and heard the testimony on the trial of Olivarez, and had formed the opinion that Olivarez was guilty as found by the jury.  He stated, however, that he had formed no opinion as to the guilt or innocence of this defendant from having heard said testimony. Defendant's challenge for cause, based upon the fact above stated, was overruled by the court, and, his peremptory challenges being exhausted, the juror was impaneled and sat upon and tried the case.

We are not prepared to say that the court erred.  It is not at all unreasonable that the juror might have heard

all the evidence in the other case and been convinced of the guilt of Olivarez, and yet have formed no opinion whatsoever as to the guilt or innocence of this defendant. We can easily imagine how such might be the case, where one party to a transaction is principal and the other an accomplice, and where one was the party stealing and the other the receiver of the stolen goods, knowing them to have been stolen. Before we would be warranted in holding the juror incompetent or necessarily partial on account of an established opinion, for the reason named, the bill of exceptions should show that the evidence, and also the liability of the parties under it, would necessarily be the same. Still, in this country where fair and impartial jurors can be had so readily, there is really no reason why questions of this character should arise, and in all cases where there is a possibility for serious doubt as to the impartiality of a juror, from whatever cause, the court, in the exercise of the discretion conferred upon it, should promptly discharge him. Code Crim. Proc. art. 636, subdiv. 13.

Objection was made by defendant to proof of the three *ear-marks* of the alleged owner of the sheep, because the best and only evidence of the ear-marks of animals would be the record or a certified copy thereof. In support of this position, arts. 4556 and 4561, Rev. Stats., are relied upon. By the former it is true that owners of stock, including sheep, are required to have an ear-mark and a brand, and to have the same recorded. The latter article provides that "no *brands* except such as are recorded by the officers named in this chapter shall be recognized in law as any evidence of ownership of *the cattle, horses or mules* upon which the same may be used." If this latter article applied at all to *sheep,*— which are not mentioned in it,— it does not apply to *marks,* but to *brands* only. *Johnson* v. *State,* 1 Texas Ct. App. 333. The court did not err in overruling the objection to the evidence.

Nor was it error to permit the district attorney to testify to a statement made by defendant to him, on the trial of Olivarez, to the effect that, "I asked the defendant H. L. Dreyer if the man then on trial was Antonio Olivarez? Dreyer said 'no, that is not Antonio Olivarez; that is Valentine Martinez. I know him.'" It is shown by the bill of exceptions that defendant H. L. Dreyer was not in charge of any officer at this time, but was voluntarily in the court house, being simply under bond. And the statement of the district attorney as to his motives in approaching defendant and asking him the question fully exonerates him from the imputation of unfairness or deceit in the matter; his object as stated being to make a witness of Dreyer in case he identified Martinez as the party who claimed to be Olivarez when he executed the bill of sale.

The remaining bill of exception points out two errors in reference to the charge, which we think are fatal to the validity of the judgment. In the 7th paragraph of the general charge the jury were instructed as follows, viz.: "If from the evidence you believe that the defendant did buy the animals described in the indictment from another in good faith, with or without a bill of sale, he is not guilty; but if you believe from all the circumstances surrounding the transaction in proof that the *sale* was not made in good faith but only to cover a fraudulent taking, then such *sale* would be no defense." Under this instruction the jury would have been fully warranted in finding the "*sale*" as made by Olivarez fraudulent so far as he, Olivarez, was concerned, and, having so found, would not give defendant, even though they might have believed him an innocent *purchaser*, the benefit of it in his defense. The *sale* might have been a base and fraudulent deceit on the part of Olivarez, and yet the defendant have been an innocent and honest *purchaser*. "In a trial for theft it is error to so charge the jury as to permit the

conviction of the accused without proof of guilty knowledge or intent." *Logan* v. *State*, 2 Texas Ct. App. 408.

Almost every day's experience teaches us that honest, upright, innocent men are made the victims of false, fraudulent and dishonest sales,—that they are the dupes of thieves and villains. But because they have been victimized is no reason why they should be held criminal, or be deprived of the right to show that fact. We are aware that this particular charge which we are commenting upon is copied *verbatim* from a charge given in the case of *Shoefercater* v. *State*, 5 Texas Ct. App. 207, and which was moreover highly commended for its fairness by this court. A mature consideration of the language leads us to the conclusion that a proper construction was not given it in that case, for the very language used by Presiding Judge Ector shows that he construed the word "sale" to mean and be synonymous with "trade," and to embrace within it the acts of both parties, and not the act of the vendor alone; for he says, "It was a proper question to be left to the jury to determine, whether the defendant *traded with Arthur* for the oxen in good faith, or whether the transaction *between them* was only a device to cover a fraudulent taking *on their part.*" Evidently he is speaking of the joint acts of the parties *in the sale and purchase.* If his construction had been correct, there can be no doubt of the correctness of the views expressed. We do not think the construction correct. The word "sale" unquestionably means the act of the vendor, and, if the jury so understood and acted upon it, they were manifestly misled to the injury of the defendant. The learnèd judge presiding below is not to blame for having fallen into this error.

Another error complained of is that the charge omits to instruct the jury upon the law of circumstantial evidence, and that the court refused a requested instruction upon this branch of the case. This error is well assigned,

and the requested instruction should have been given. *Hunt* v. *State*, 7 Texas Ct. App. 212; *Smith* v. *State*, 7 Texas Ct. App. 382; *Struckman* v. *State*, 7 Texas Ct. App. 581.

There is another matter to which we would call attention, and it is this: Whenever, under an ordinary indictment for theft, it is sought to hold the defendant liable under evidence proving the receipt and concealment of stolen goods, the verdict of the jury should show that they found him guilty of receiving and concealing stolen property, knowing it to be stolen. This is recommended as the better practice, and the reasons for its observance will be found in the cases of *Vincent* v. *State*, 9 Texas Ct. App. 46; *McCampbell* v. *State*, 9 Texas Ct. App. 124, and *Cohea* v. *State*, 9 Texas Ct. App. 173.

Because of error in the charge of the court as above indicated and discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*